GENOVESE v. GENOVESE.

1. EVIDENCE—SECONDARY EVIDENCE—LOST DOCUMENT—FOUNDATION.
   The fact that original writings have been lost, destroyed, or are otherwise beyond the power of the party to produce must first be established as a foundation for the introduction of secondary evidence.

2. SAME—PAROL EVIDENCE—LOST DOCUMENTS—CIRCUMSTANCES OF LOSS.
   Parties should be required to explain fully the circumstances of the loss or destruction of a written document when they seek to rely upon parol evidence to establish the contents of a written agreement claimed to be lost or destroyed, so as to relieve themselves from any reasonable suspicion of having connived at its loss, and to show its contents by proof that satisfies the mind as to its terms.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 20 Am Jur, Evidence §§ 437, 440.

3. Lost Instruments—Foundation—Record.

> Judgment for plaintiff in suit to recover money loaned where memorandum evidencing the loans has been lost *held*, improper, where the foundation laid for the loss of the document is insufficient, there are specific lapses of memory concerning it, and the record shows the manifest reliance of the trial court on the document as proving the existence of the loan.

Appeal from Berrien; Hadsell (Philip A.), J. Submitted Division 3 October 6, 1966, at Grand Rapids. (Docket No. 1,553.) Decided December 22, 1966.

Complaint by Joe Genovese against Anthony Genovese and Lena Genovese for the repayment of certain loans. Judgment for plaintiff. Defendants appeal. Reversed and remanded for new trial.

*Gore & Williams,* for plaintiff.

*Thomas W. McCoy,* for defendants.

Fitzgerald, J. This appeal arises from alleged intrafamily loans wherein plaintiff claims that he loaned his brother and sister the total of $2,500 in varying sums on different dates in the years 1959 and 1960. Defendants denied the loans and plaintiff brought suit alleging a separate count for each loan.

Both sides concede that the alleged loans when made were not evidenced by promissory notes or any similar writing. All of the plaintiff's witnesses at the trial were members of the same family: the plaintiff; his sister, Mary Carlbom; and his 2 sons, Joe, Jr., and John.

Following trial without a jury, the court awarded plaintiff a judgment of $2,500. On appeal, defendants allege a number of errors: specifically, whether the trial court erred in denying a motion for a

directed verdict in favor of defendants at the end of plaintiff's proofs and the narrower questions of whether sufficient proof was adduced as to whether money was actually borrowed in the period of 1959 and 1960, and even more narrowly whether certain items of evidence should have been received or excluded.

It can be said that the record of this trial is best characterized as containing specific lapses of memory, a lost document, and extremely contradictory testimony.

In an effort to prove the existence of the loans, plaintiff testified to notations he had made on a slip of paper, the slip subsequently being lost. His sister, Mary Carlbom, however, testified that when the plaintiff entered the hospital sometime during 1960 he gave her his billfold to keep while he was in the hospital, and that at that time she saw a paper on which was written, " '$2,500' and a list of figures."

That the trial court placed great reliance on this testimony is evident from the following statement made by the court following closing argument of counsel:

"I don't think there is any use of commenting on the testimony. The amount was established by the books of the plaintiff which was seen by the witness, Mary, whose last name I can't remember, before this act was taken."

It is this specific admission of evidence to which we address ourselves. In establishing the existence and the loss of the slip of paper, the following colloquy took place between plaintiff and his attorney:

"*Q.* All right. Now, where is the slip or the paper or book that you kept this account on?

"*A.* I don't know what happened to it; just lost it or something.

"*Q*. Did you have the amount listed in items or in totals?

"*A*. No, I had them separate by dates and everything; the time that I give them the money. I carried it around all these years, and it got lost some place.

"*Q*. Did you ever show this to anybody?

"*A*. My sister Mary saw it, and my boys saw it."

Testimony of the boys relative to seeing the slip of paper is nonexistent and the sister, Mary Carlbom, testified as follows:

"*Q*. Did you ever see a paper or record purporting to be the amount?

"*A*. Yes.

"*Q*. Where did you see that?

"*A*. When Joe was in the hospital he gave me his papers.

"*Mr. McCoy:* Objection to any testimony on this, Your Honor, as self-serving.

"*The Court:* It's bookkeeping. You may answer.

"*A*. When Joe was in the hospital once he gave me all his papers to keep and his billfold, and he went through them. He says, 'Here's the money they owe me.' He had it down on a piece of paper.

"*The Court:* That will be stricken, what he said.

"*A*. He went through the papers he gave me, in his billfold.

"*Q*. What did you see there with reference to this?

"*A*. I saw a paper. It said '$2,500,' and a list of figures. He says 'here's what they owe me,' and I kept them for him until he got out of the hospital, and then he took them."

The fact that the paper here involved was lost complicates matters and brings us to the rather stringent rules involving such evidence. In 11 Michigan Law and Practice, Evidence, § 101, p 258, it is stated:

"Where a party seeks to introduce secondary evidence of the contents of documents, and as a foundation for the introduction of such evidence relies on the fact that the original writings have been lost, destroyed or otherwise beyond the power of the party to produce, he must first establish this fact."

The statements, *supra,* by plaintiff indicate the lack of foundation laid for the introduction of parol evidence to establish the contents of the paper.

In *Shouler* v. *Bonander* (1890), 80 Mich 531, it is stated (p 534):

"The proof of the loss of the instrument is also unsatisfactory. When parties rely upon parol evidence to establish the contents of a written agreement claimed to be lost, they should be required to explain fully the circumstances of the loss or destruction of the paper, so as to relieve themselves from any reasonable suspicion of having connived at its loss, and to show its contents by proof that satisfies the mind as to its terms."

If the foundations for the existence and loss of the document were shaky, shakier still are the responses of the witness, Mary Carlbom, to cross-examination regarding it:

"*Q.* You stated Joe gave you a book?
"*A.* Not a book.
"*Q.* What did Joe give you?
"*A.* Gave me his billfold with papers in it, to keep while he was in the hospital.
"*Q.* Did he open this billfold up to show you the papers?
"*A.* Yes.
"*Q.* When was that?
"*A.* I don't know the exact date when he was in Mercy Hospital.
"*Q.* You don't know the exact date when he was in Mercy Hospital? You don't know when it was that he gave you these papers?
"*A.* Don't know the exact date.

"*Q*. Do you remember the year?

"*A*. No.

"*Q*. Could it have been before 1959?

"*A*. I don't think so.   I don't know.

"*Q*. Well, then otherwise you know that there was a paper, but you don't know when it was given to you, is that correct?

"*A*. Yes.

"*Q*. It could have been before 1959?

"*A*. You can check when he was in the hospital.

"*Q*. That's his job.   My job is to ask you questions. Do you know when it was?

"*A*. Not exactly.

"*Q*. Could it have been before 1959?

"*A*. I don't know.

"*Q*. Could it have been through 1960?

"*A*. It could have been.

"*Q*. Could it have been in 1959?

"*A*. I don't know.   I can't answer that—any exact date."

In view of the lack of foundation laid for the loss of the document, the specific lapses of memory concerning it, and the manifest reliance of the court on the document as proving the existence of the loans, we hold a new trial must be granted.

Other questions on appeal involving the sufficiency of evidence and the denial of introduction of other evidence are not considered in view of the reversal on the point discussed herein.

Reversed and remanded for a new trial.   Costs to appellees.

BURNS, P. J., and T. G. KAVANAGH, J., concurred.